UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:09CV-254-H

[CAPITAL CASE]

MELVIN LEE PARRISH                                                    PETITIONER

v.

THOMAS L. SIMPSON, WARDEN                                            RESPONDENT

<u>MEMORANDUM OPINION AND ORDER</u>

Melvin Lee Parrish filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 in
this Court on April 6, 2009 (DN 1 ).  Respondent has moved to dismiss several of Parrish's
claims for non-exhaustion of state-court remedies and/or procedural default.  Fully briefed,
Respondent's motion to dismiss is ripe for decision.  For the reasons explained below, the Court
will grant the motion to the extent that it relates to claim two.  The Court will deny the motion
with respect to the remaining claims.

**I.**

The facts underlying Parrish's conviction and sentence are recounted in the Kentucky
Supreme Court's decision on direct appeal.  *See Parrish v. Commonwealth*, 121 S.W.3d 198
(2002).  This Court presumes the state court's findings of fact to be correct.  *See* 28 U.S.C.
§ 2254(e)(1).  The Kentucky Supreme Court recited the facts as follows:

> Parrish was found guilty by a jury of intentionally murdering his cousin, Rhonda
> Allen, and her ten-year-old son, LaShawn, on December 5, 1997.  He was also found
> guilty of attempting to murder Rhonda's five-year-old son, Jonathan.  These crimes
> were committed in the course of a robbery.  He was sentenced to death for the
> murder of the child; life without parole for the murder of the female victim; 20 years
> enhanced to life for the attempted murder of the second child, and 20 years enhanced
> to 50 years for the robbery.
>
> At trial, there was evidence introduced that Parrish and others had spent the daytime

of the murders smoking crack cocaine. The evidence indicates that Parrish asked his cousin to return the money he had paid her earlier that day for crack cocaine. When she refused, he stabbed her multiple times and took the money. The stabbing occurred in the living room of her apartment and Parrish then went to a back bedroom where he assaulted the children. One child survived and was able to testify that Parrish had attacked him and his brother. In a taped statement made to police the morning after the murders, Parrish admitted stabbing Rhonda, "I asked her twice (to borrow back the money) and she said no and I guess I killed her." However, he denied doing any harm to the children. The prosecution introduced evidence at trial from a jailhouse informant who testified that while he was incarcerated with Parrish, the accused told him that he had committed the acts and intended to avoid conviction by faking insanity.

*Id.* at 201-02.

Parrish timely appealed his conviction and sentence. The Kentucky Supreme Court affirmed. Parrish then filed a petition for certiorari in the United States Supreme Court, which was denied on May 17, 2004. On March 4, 2005, Parrish filed a motion pursuant to Kentucky Rule of Criminal Procedure 11.42 in the trial court. The trial court denied the motion. The Kentucky Supreme Court affirmed the trial court's denial on January 22, 2009.

Parrish then filed his petition for a writ of habeas corpus in this Court. Parrish's petition raises the following seven claims for relief:

1) the admission of expert opinion evidence that the adult female victim, Rhonda Allen, was pregnant at the time of her death denied Parrish a fundamentally fair trial in violation of the Fourteenth Amendment;

2) the admission of jailhouse informant Pemon Person's testimony, without a cautionary admonition, denied Parrish a fundamentally fair trial in violation of the Fourteenth Amendment;

3) Parrish received ineffective assistance of counsel in violation of the Sixth Amendment during the guilt/innocence phase because:

a) counsel failed to properly argue that Parrish's waiver of his *Miranda* rights was not intelligent and knowing; and

b) counsel failed to properly handle minor victim Jonathan Allen's testimony;

4) the trial court denied Parrish a fundamentally fair trial in violation of the Fourteenth Amendment because it prohibited Parrish from introducing letters and cards from his children during the penalty phase;

5) Parrish received ineffective assistance of counsel in violation of the Sixth Amendment during the penalty phase because:

a) counsel failed to properly investigate and present Parrish's diminished intellectual capacity in mitigation of the death penalty;

b) counsel did not properly present important and necessary evidence related to Parrish's future dangerousness; and

c) counsel did not properly handle issues related to mitigation and unanimity with respect to the penalty phase jury instructions;

6) the trial court denied Parrish a fundamentally fair trial in violation of the Fourteenth Amendment because the trial court's instruction on reasonable doubt improperly limited the discretion of the jury to return a sentence less than death; and finally

7) the Eighth Amendment to the Federal Constitution prohibits the execution of mentally retarded defendants including Parrish.

(DN 1).  Respondent argues that the majority of these claims are either unexhausted or procedurally defaulted.

## II.

Since Parrish filed his petition for writ of habeas corpus on April 6, 2009, his case is governed by Chapter 153 of the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996.  *See Dennis v. Mitchell*, 354 F.3d 511, 517 (6th Cir. 2003); *Lindh v. Murphy*, 521 U.S. 320, 327-29 (1997).  As a threshold issue, Parrish contends that the AEDPA is unconstitutional. He asks the Court to review his case *de novo* without consideration of the AEDPA.

Similar challenges to the AEDPA amendments have been rejected by the First, Fourth, Seventh, and Ninth Circuits, sometimes with vigorous dissents.  *See Evans v. Thompson*, 518

F.3d 1 (1st Cir. 2008),[1] *Crater v. Galaza*, 491 F.3d 1119 (9th Cir. 2007); *Green v. French*, 143 F.3d 865 (4th Cir. 1998), abrogated in part by *Williams v. Taylor*, 529 U.S. 362 (2000); *Lindh v. Murphy*, 96 F.3d 856 (7th Cir. 1996) (en banc), rev'd on other grounds, 521 U.S. 320 (1997). The Court adopts the reasoning and analyses of these majority opinions. Thus, this Court concludes that the AEDPA is constitutional and that it must be applied to Parrish's case.

Under the AEDPA,

(d) An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254.

Respondent's motion to dismiss requires the Court to the consider the exhaustion prerequisite under § 2254 and its exceptions as well as issues related to the procedural default doctrine.

## A. Exhaustion

---

[1]The Court observes that Sixth Circuit Senior Judge Eugene E. Siler, Jr., sat by designation on this case.

4

Ordinarily, state prisoners must first exhaust their available state court remedies before seeking habeas relief by fairly presenting all their claims to the state courts. 28 U.S.C. § 2254(b), (c); *Rhines v. Weber*, 544 U.S. 269, 274 (2005) ("AEDPA preserved [the] total exhaustion requirement."); *Wilson v.Mitchell*, 498 F.3d 491, 498 (6th Cir. 2007); *White v. Mitchell*, 431 F.3d 517, 525-26 (6th Cir. 2005); *Whiting v. Burt*, 395 F.3d 602, 612 (6th Cir. 2005). Exhaustion is

required before a state prisoner may bring a habeas corpus petition under 28 U.S.C. § 2254. *Hamm v. Saffle*, 300 F.3d 1213, 1216 (6th Cir. 2002). The petitioner bears the burden of proving that he has exhausted those remedies. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

Normally, the exhaustion requirement is satisfied after the petitioner fairly presents all his claims to the highest court in the state in which the petitioner was convicted, thus giving the state a full and fair opportunity to rule on the petitioner's claims before he seeks relief in federal court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *Wilson*, 498 F.3d at 498-99; *Deitz v. Money*, 391 F.3d 804, 808 (6th Cir. 2004). Both the factual and legal basis for the claim must have been presented to the state courts in order to be considered "fairly presented." *Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006). The exhaustion principle requires a state prisoner to invoke

one full round of the state's established review procedures. *O'Sullivan*, 526 U.S. at 842.

The Sixth Circuit has identified four actions that a petitioner can take which are significant to the determination of whether he has properly asserted both the factual and legal bases for his claim, *i.e.*, "fairly presented" that claim:

> (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms

> of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.

*Whiting*, 395 F.3d at 613 (quoting *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)); *see also William v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006); *Blackmon v. Broker*, 394 F.3d 399, 400 (6th Cir. 2004).

If a petitioner did not "fairly present" his claim to the state court, ordinarily the entire petition must be dismissed for lack of exhaustion so long as a remedy is still available for the petitioner to pursue in the state courts. *Rose v. Lundy*, 455 U.S. 509, 518-20 (1982); *see also Blackmon*, 394 F.3d at 400 ("Federal courts lack jurisdiction to consider a habeas claim that was not fairly presented to the state courts."). However, the exhaustion rule requires dismissal of petitions only when the prisoner still has a remedy available to him to pursue in the state courts which have not yet been given an opportunity to review the challenged conviction on the grounds asserted in the habeas petition. 28 U.S.C. § 2254(b)(1)(A); *Gray v. Netherland*, 518 U.S. 152, 161 (1996) (citing *Engle v. Isaac*, 456 U.S. 107, 125, n.28 (1982)). If a prisoner fails to present his claims to a state court and he is now barred from pursuing relief in the state courts, his petition should not be dismissed for lack of exhaustion because there are simply no remedies *available* for him to exhaust. *Hannah v. Conley*, 49 F.3d 1193, 1195-96 (6th Cir. 1995); *Rust*, 17 F.3d at 160.

This does not mean, however, that a federal court is permitted to hear a claim that has never before been presented in state court. A federal court can entertain such a claim only if the petitioner can show cause to excuse his failure to present the claim in the state courts and actual prejudice to his defense at trial or on appeal. *Gray*, 518 U.S. at 162; *Coleman v. Thompson*, 501

U.S. 722, 750 (1991).

## *B. Procedural Default*

Habeas petitioners face an additional hurdle before federal courts may review a question of federal law decided by a state court. As applied in the habeas context, the doctrine of procedural default prevents federal courts from reviewing claims that a state court has declined to address because of a petitioner's noncompliance with a state procedural requirement. In *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), the United States Supreme Court held that, for purposes of comity, a federal court may not consider "contentions of federal law which are not resolved on the merits in the state proceeding due to petitioner's failure to raise them as required by state procedure."

The Sixth Circuit has adopted a four-part test for determining whether a claim has been procedurally defaulted:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction . . . Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim . . . [Fourth,] the petitioner must demonstrate under [*Wainwright v.*] *Sykes*, 433 U.S. 72 (1977) that there was "cause" for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Caver v. Straub*, 349 F.3d 340, 346 (6th Cir. 2003) (quoting *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)).

With these guiding principles in mind, the Court now turns to Respondent's motion to dismiss.

# III.

## *A. Claim One*

Parrish's first claim for relief is that the admission of expert opinion evidence that the adult female victim, Rhonda Allen, was pregnant at the time of her death denied him a fundamentally fair trial in violation of the Fourteenth Amendment. Respondent contends that Parrish presented this claim to the Kentucky Supreme Court as an error of state law only, and therefore, that the claim is both unexhausted and procedurally defaulted.

This Court must determine whether Parrish sufficiently framed this claim as a federal constitutional violation to the Kentucky Supreme Court. In doing so, this Court is guided by the four factors identified by the Sixth Circuit as relevant considerations--(1) reliance on federal cases employing constitutional analysis; (2) reliance on state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law. *Whiting*, 395 F.3d at 613.

Parrish's argument concerning this issue is contained on pages sixteen through nineteen of his brief to the Kentucky Supreme Court (DN 19, Ex. 1). In the Table of Points and Authorities for this claim, Parrish cited to the Fourteenth Amendment to the United States Constitution. In the argument section of his brief, Parrish laid out the facts surrounding the admission of the expert opinion that Rhonda Allen was pregnant when Parrish killed her.

He explained why the evidence was irrelevant and how he believed it improperly and unfairly prejudiced him at trial.[2] He then argued in his brief that: "Admission of this evidence was an egregious error that denied appellant the due process of law guaranteed by the 14th Amendment of the U.S. Constitution and by Section 2 of the Kentucky Constitution. Introduction of this evidence made the finding of guilt fundamentally unfair." DN 19, Ex. 1 at p. 17.

In rejecting this claim, the Kentucky Supreme Court devoted the majority of its discussion to state law. However, it did include a separate, albeit brief, statement regarding Parrish's federal constitutional claim:

> The pregnancy of the female victim was not sensational or shocking or likely to induce any undue sympathy. The probative value of the evidence was not substantially outweighed by the danger of undue prejudice. *See* KRE 403. ***Parrish was not denied a fair trial or due process of law under either the federal or state constitutions***.

*Parrish*, 121 S.W.3d at 203 (emphasis added).

The Sixth Circuit has held that general allegations of the denial of rights to a "fair trial" and "due process" do not fairly present claims that federal constitutional rights were violated. *Fulcher*, 444 F.3d at 798; *Blackmon*, 394 F.3d at 400 (citing *McMeans*, 228 F.3d at 681). "To

---

[2]Parrish argued in his brief that:

> Appellant is unable to see how Ms. Allen's physical condition could have anything to do with these issues. The only reasonable inference from the introduction of this evidence is that the Commonwealth intended (a) to make Ms. Allen a more sympathetic person, given the revelation that she was a drug dealer and (b) create the "forbidden inference" that Melvin Parrish was a monster and that a monster like Melvin Parrish would be guilty of the heinous acts charged.

*Id.* at 18.

escape procedural default, [such claims] must of themselves be fairly presented, rather than functioning as catchall language appearing within the presentation of other nonconstitutional arguments." *Blackmon*, 394 F.3d at 401.

Relying heavily on *Slaughter v. Parker*, 450 F.3d 224 (6th Cir. 2006), Respondent argues that the language in Parrish's brief was at most a passing reference to the federal Constitution, and therefore, is insufficient to have preserved claim one. This Court has extensively reviewed the Sixth Circuit's opinion in *Slaughter* as well as the Kentucky Supreme Court's opinion from Slaughter's state court appeal. *Slaughter* is distinguishable in two respects.

First, unlike Parrish's case, the Kentucky Supreme Court analyzed Slaughter's claim only in terms of state law. *Slaughter v. Commonwealth*, 744 S.W.2d 407, 413 (1987). "The exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings." *Rose*, 455 U.S. at 518; *Linscott v. Rose*, 436 F.3d 587, 592 (6th Cir. 2006) ("The doctrine of exhaustion . . . raise[s] only federal-state comity concerns and [is] not a jurisdictional limitation on the power of the court."). "It provides state courts an opportunity to address alleged flaws in their criminal procedures. The requirement is based on the presumption that states maintain adequate and effective remedies to vindicate federal constitutional rights." *Turner v. Bagley*, 401 F.3d 718, 724 (6th Cir. 2005). In this case, the Kentucky Supreme Court's opinion addressing the federal constitutional dimensions of Parrish's claim indicates that the state court was not deprived of its right to consider the claim. It would seem unreasonable to hold that Parrish did not say enough in his state court brief to put the state court on notice of his federal claim when the state court actually addressed the claim in its opinion.

The second distinguishing feature of *Slaughter* is that Slaughter's use of the phrase "fundamentally unfair" in his state court brief was contained within an argument about the propriety of allowing jurors to question witnesses directly. The "fundamentally unfair" language in this case was used in connection with admission of evidence related to the victim's pregnancy. It is within the "mainstream" of constitutional law that if "evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief." *Payne v. Tennessee*, 501 U.S. 808, 825 (1991); *see also West v. Bell*, 550 F.3d 542 (6th Cir. 2008) (holding that use of the phrase "highly prejudicial and improper" was sufficient to preserve a federal claim regarding prosecutorial misconduct because even "though this statement was not close to an invocation of the Supreme Court's standard for judging prosecutorial misconduct, it was evocative of language that [the Sixth Circuit] articulated in *United States v. Leon*, 534 F.2d 667 (6th Cir. 1976)").

After considering all the relevant factors, this Court finds that Parrish sufficiently framed claim one as a federal constitutional violation such that the Kentucky Supreme Court had an opportunity to, and actually did, rule on the federal dimensions of the claim. As such, the Court will deny Respondent's motion to dismiss with respect to this claim.

### B. Claim 2

Parrish's second claim for relief is that the admission of jailhouse informant Pemon Person's testimony without a cautionary admonition denied Parrish a fundamentally fair trial in violation of the Fourteenth Amendment. Parrish concedes that "this issue was not fairly presented as a federal constitutional claim in state court" (DN 20 at 6). As a result of this concession, Respondent contends that it is undisputed that this claim is unexhausted, and

therefore, that Parrish's entire petition must be dismissed as a mixed petition (DN 21 at 1).

Respondent's argument ignores the fact that for a claim to be technically unexhausted there must still be an actual avenue of relief available for the petitioner to pursue in state court. "Put otherwise, if a state remedy is no longer available at the time of the federal petition, the exhaustion doctrine poses no bar to federal review." *Wagner v. Smith*, 581 F.3d 410, 415 (6th Cir. 2009). Thus, it is pivotal for this Court to determine whether there are any available avenues for Parrish to pursue in the Kentucky courts at this time.

Parrish has already pursued a direct appeal of his criminal conviction. A Kentucky defendant may file one post-conviction motion for relief from judgment within three years after the entry of final judgment. Ky. R. Crim. P. 11.42(10). Two exceptions to the rule's time limit permit a motion to be filed at a later date: (1) if the facts upon which the claim is based were unknown to the movant and they could not have been ascertained by the exercise of due diligence, or (2) if the constitutional right asserted was not established within the three-year period and the right has been held to apply retroactively. Ky. R. Crim. P. 11.42(10)(a)-(b). Neither of these exceptions would apply to Parrish's claim. Additionally, normally, a Kentucky defendant will be barred from presenting a claim in a Rule 11.42 motion if the claim could have been asserted in his direct appeal.

Neither Respondent nor Parrish has identified any remaining avenues of relief that would be available for Parrish to raise this claim, and the Court can find none after having reviewed the applicable Kentucky procedural rules. As such, the Court concludes that this claim is not unexhausted because there are no avenues of relief that remain open for Parrish to assert this claim state court. Accordingly, Parrish's petition is not mixed.

This does not mean, however, that the Court is free to review claim two's substance. A federal court can entertain such a claim only if the petitioner can show cause to excuse his failure to present the claim in the state courts and actual prejudice to his defense at trial or on appeal. *Gray*, 518 U.S. at 162. Parrish has not made a cause or prejudice argument. If a petitioner fails to advance a cause and prejudice argument to save a claim that was not raised in state court, the court may deem the "cause and prejudice" argument abandoned. *See Roberts v. Carter*, 337 F.3d 609, 613 (6th Cir. 2003) ("Roberts, however, fails to advance any argument in support of a finding of cause and prejudice. As such, we consider Roberts' cause and actual prejudice argument abandoned."). Parrish has made no effort to salvage claim two by arguing cause and prejudice. As such, the Court concludes that Parrish procedurally defaulted this claim, and the Court will grant Respondent's motion to dismiss as it relates to this claim.

### C. Claims 4 and 6[3]

Parrish's fourth claim is that the trial court denied him a fundamentally fair trial in violation of the Fourteenth Amendment because it prohibited him from introducing letters and cards from his children during the penalty phase. Parrish's sixth claim is that the trial court denied him a fundamentally fair trial in violation of the Fourteenth Amendment because the trial court's instruction on reasonable doubt improperly limited the discretion of the jury to return a sentence less than death. Respondent contends that both of these claims are unexhausted because Parrish did not fairly present them as federal constitutional claims to the Kentucky Supreme Court.

---

[3]The Court considers claims four and six together because Parrish presented them to the Kentucky Supreme Court in the same section of his appellant brief and in a similar manner.

Parrish presented the facts related to claim four, the trial court's preclusion of his children's letters and cards, in section ten of his appellant brief (DN 19 at Ex. 1). He presented the facts related to claim six, the reasonable doubt instruction, in section nine of his appellant brief. *Id.*. The legal arguments in sections nine and ten of Parrish's appellant brief were devoted entirely to state law issues. However, in section eleven of Parrish's appellant brief, entitled "the errors enumerated in arguments 6 to 10 resulted in a penalty proceeding that violated federal constitutional requirements," Parrish made additional arguments concerning how the errors outlined in sections nine and ten also violated his federal constitutional rights. He explicitly pointed out to the Kentucky Supreme Court that he intended the federal law arguments in section eleven to be considered separate from his arguments regarding state law in the prior sections:

> Appellant wishes the Court to know that he has presented Arguments 6, 7, 9 and 10 separately and based primarily on state ground because he wished to emphasize that the Court could reverse or vacate on the basis of Kentucky Law. However, there is no question that the errors set out in these arguments singularly or collectively, resulted in an unfair and unconstitutional sentencing hearing under the federal constitution. Under either theory, the sentence of death must be vacated.

(DN 19, Ex. 1 at p. 55).

With respect to the trial court's refusal to allow him to introduce his children's cards and letters, Parrish argued in section eleven that:

> In *Skipper v. South Carolina*, 476 U.S. 1 (1986), the court held that in capital cases the sentencer "can not be precluded from considering, as a mitigating factor, any aspect of the defendant's character or record, and any circumstances of the offense that the defendant proffers as a basis for a sentence less than death." As shown in Argument 10, appellant was prevented from presenting his best evidence as to character, evidence that he was loved by his own children. Obviously, this error violated the 8th and 14th Amendments as construed by the U.S. Supreme Court.

DN 19, Ex. 1 at p. 55.

In *Skipper*, the United States Supreme Court held that it is well-established that the cruel

14

and unusual punishment clause of the Eighth Amendment requires that the sentencer not be precluded from considering relevant mitigating evidence. In his brief, Parrish explained how *Skipper* applied to the facts of his case: "appellant was prevented from presenting his best evidence as to character, evidence that he was loved by his own children. Obviously, this error violated the 8th and 14th Amendments as construed by the U.S. Supreme Court." Parrish cited federal constitutional authority, applied the facts of his case to the authority, and clearly pointed out to the Kentucky Supreme Court that he was raising a separate federal claim in addition to the state law claim he raised earlier in his brief. The Court concludes that Parrish fairly presented claim four as a federal claim to the Kentucky Supreme Court.

With respect to the reasonable doubt instruction, Parrish argued:

> The federal 8th Amendment requires legislative guidelines to circumscribe the imposition of the death penalty. *Young v. Commonwealth*, Ky., 50 S.W.3d 148, 161 (2001). . . . The error set out in Argument 9 also shows violation of the 8th and 14th Amendments requirement for "legislative guidelines." The instruction on reasonable doubt in this case asserted a predisposition for death that cannot be found in the words of KRS 532.025 and cannot be legitimately be read into that statute. The reasonable doubt instruction tipped the balance in favor of death and predisposed the jury to reach that conclusion. This can not be permitted.

DN 19, Ex. 1 at p. 54.

In his reply brief on direct appeal,[4] Parrish further explained why he contended that the reasonable doubt instruction violated his federal constitutional rights:

> Appellant has tried to state as plainly as possible that reasonable jurors, reading the second sentence of the second paragraph of Instruction 7, would understand it to say that death should be imposed unless the jury had a reasonable doubt that it should not be imposed. This is not a legal argument, except to the extent that the Eighth

_____

[4]The Sixth Circuit has held that raising a constitutional issue for the first time in a reply brief to the Kentucky Supreme Court is sufficient to satisfy exhaustion. *See Rudolph v. Parke*, 856 F.2d 738, 739-40 (6th Cir. 1988).

Amendment . . . prohibit[s] any instruction that tells the jury to consider death first and to refrain from imposing that penalty only if the jury has a "reasonable doubt" that death is not an appropriate penalty.

Absent from the Commonwealth's argument on this point is any claim that the jury could read the language of the instruction in any way except as a command to consider death as the first option, to be rejected only if the jury had a reasonable doubt that it was the right punishment. Rather the Commonwealth says that the instruction is found in Justice Cooper's instruction book. . . . Once the jury finds the existence of an aggravating circumstance, the decision as to punishment is entirely within the jury's discretion. It may summarily decide that death is not appropriate. It may start with the least onerous punishment, find it appropriate and impose a sentence of 20 years. It need not start with death as the first consideration. The problem with the instruction is that it says that the jury must do so. The 8th Amendment . . . prohibit[s] this instruction because it stacks the deck in favor of death, contrary to public policy of this Commonwealth and the case precedents of the U.S. Supreme Court.

(DN 19, Ex. 3 at p. 6-7).

The Kentucky Supreme Court briefly addressed Parrish's federal claim regarding the reasonable doubt instruction in its opinion:

The instructions allowed the jury to consider options other than death, even when a finding is made as to aggravating circumstances. *Wilson v. Commonwealth, Ky.*, 836 S.W.2d 872 (1992). ***There was no error and no violation of either the federal or state constitutions.*** The jury was not instructed that it needed a reasonable doubt to impose a death sentence.

*Parrish*, 121 S.W.3d at 207.

With respect to claim six, Parrish cited *Young*, a state case that deals in part with the constitutional mandate that states have guidelines for imposing the death penalty, cited both the Fourteenth and Eighth Amendments, explained why he contended that the reasonable doubt instruction violated his constitutional rights, and clearly stated to the Kentucky Supreme Court that he intended the federal aspect of the claim to be distinct from the state law arguments that he made in an earlier section of his brief. Additionally, as with claim one, the Kentucky Supreme

16

Court actually considered the federal dimensions of this claim. Accordingly, this Court finds that Parrish fairly presented his reasonable doubt claim to the Kentucky Supreme Court as a federal issue.

The Court will deny Respondent's motion to dismiss to the extent that it relates to claims four and six.

### D. Claim 7

Parrish's seventh claim for relief is that the Eighth Amendment prohibits the execution of mentally retarded persons, including himself. Parrish raised this argument for the first time in his 11.42 motion. Respondent asserts that this claim is procedurally defaulted because "the Justices noted that the proper place for Petitioner to have made his claim was in his direct appeal and it was inappropriate for them to review the claim in a post-conviction proceeding" (DN 19 at 8). In analyzing this claim for relief, the Kentucky Supreme Court held:

> To begin with, this claim is not an appropriate one for an RCr 11.42 proceeding. If Appellant wanted to challenge the substance of the trial court's ruling on this issue, he should have done so in his direct appeal, not by means of an RCr 11.42 motion. "It is not the purpose of RCr 11.42 to permit a convicted defendant to retry issues which could and should have been raised in the original proceeding, nor those that were raised in the trial court and upon an appeal considered by this court." *Thacker v. Commonwealth*, 476 S.W.2d 838, 839 (Ky. 1972); *see also Mills v. Commonwealth*, 170 S.W.3d 310, 326 (Ky. 2005) ("[A]n RCr 11.42 motion is limited to issues that were not and could not be raised on direct appeal." (emphasis added)). Though he did not then have the benefit of *Atkins*, Kentucky already had in place a statutory mechanism for dealing with mentally retarded individuals facing the death penalty and Appellant took full advantage of that mechanism. Though Appellant did not raise this issue in his direct appeal, he easily could have. An RCr 11.42 motion simply is not an appropriate vehicle to raise it. While the circuit court revisited the mental retardation evidence in its order denying the RCr 11.42 motion, it was unnecessary to do so because the issue had already been addressed prior to the trial.
>
> Regardless, Appellant's claim is clearly refuted by the record. As noted by the circuit court in its order prior to Appellant's trial and in its order denying the RCr

11.42 motion, substantial evidence indicated that Appellant's IQ was at least 70, which is the cut-off for mental retardation recognized in *Atkins* and required by Kentucky's statutory scheme. Ample evidence supported the trial court's ruling. That the record also contains an IQ score for Appellant of 68 from when he was younger (explained by an expert as the result of lack of motivation) does not allow this Court to overturn the factual findings by the trial court on this issue. Appellant also cites to evidence of "substantial deficits in adaptive behavior," which are also required by KRS 532.130(2), but ignores the statute's requirement that these must coexist with an IQ of 70 or below.

Appellant also claims that the mental retardation statutory framework, KRS 532.130 - .140, employs a definition of "mental retardation" that is at odds with the requirements of *Atkins*. In *Atkins*, the Supreme Court specifically left the method for defining and identifying mentally retarded offenders to the states. *See Atkins*, 536 U.S. at 317. This Court has identified and approved KRS 532.130 - .140 as the means by which *Atkins* would be applied in Kentucky, and has held the statutory scheme to be constitutional under *Atkins*. *Bowling v. Commonwealth*, 163 S.W.3d 361, 374-76 (Ky. 2005). Appellant asks this Court to overturn *Bowling's* approval of the statutory framework; this Court declines the invitation to do so.

*Parrish v. Commonwealth*, No. 2006-SC-000592-MR, 2008 Ky. LEXIS 338 (Ky. Sept. 18, 2008).

The Court must apply the *Maupin* factors to determine whether Parrish procedurally defaulted this claim. *Maupin*, 785 F.2d at 138.

First, the Court must determine whether there is an applicable state procedural rule that Parrish failed to comply with in presenting this claim. *Id.* Parrish first raised this claim in his 11.42 motion. However, the claim could have been raised on direct appeal. In *Sanborn v. Commonwealth*, 975 S.W.2d 905 (Ky. 1998), the Kentucky Supreme Court held that an 11.42 motion "is limited to issues that were not and could not be raised on direct appeal." Because Parrish could have raised his claim as part of his direct appeal, he did not properly present it to the state court.

However, this fact does not end the Court's inquiry. The Court must determine whether

the Kentucky courts "actually enforced the state procedural sanction." *Maupin*, 785 F.2d at 138.

A federal habeas court is precluded from reviewing a state court judgment only if it determines

that the "judgment rests on a state-law ground that is both 'independent' of the merits of the

federal claim and an 'adequate' basis for the court's decision." *Harris v. Reed*, 489 U.S. 255,

260 (1989).

The Sixth Circuit's opinion in *Bowling v. Parker*, 344 F.3d 487, 498 (6th Cir. 2003), is

particularly relevant. In *Bowling*, the respondent argued that a number of Bowling's claims were

procedurally defaulted because they had only been asserted in Bowling's supplemental 11.42

motion that the trial struck from the record. On appeal Kentucky Supreme Court upheld the trial

court's decision to strike the supplemental motion.[5] The Sixth Circuit, however, held that the

claims were not procedurally defaulted because the Kentucky Supreme Court did not

unequivocally indicate that it was enforcing the procedural default. Rather, the Sixth Circuit

determined that the Kentucky Supreme Court's decision could be read either way and that the

ambiguity had to resolved Bowling's favor:

> The language used by the Kentucky Supreme Court in its opinion reveals that it did
> not clearly rely on Bowling's procedural default to dismiss the claims raised in his
> supplemental motion. After noting that the claims were raised only in the struck
> supplemental pleadings, the Kentucky Supreme Court went on to consider the merits
> of those claims, stating, "Notwithstanding that his supplemental motion was struck

---

[5]With respect to the supplemental motion, the Kentucky Supreme Court held:

> We cannot conclude that the trial court abused its discretion by declining to permit
> a belated verification of an unverified motion that was a supplement to a previous
> RCr 11.42 motion which had been filed only after protracted litigation. The trial
> court seriously reviewed and considered the voluminous pleadings in this case before
> deciding to strike Appellant's unauthorized pleadings. No error occurred.

*Bowling v. Commonwealth*, 981 S.W.2d 545, 549 (Ky. 1998).

by the trial court, in the interest of judicial economy we will review the seven additional claims of ineffective assistance of counsel raised in the motion." *Bowling II*, 981 S.W.2d at 551.

There are two reasonable interpretations to which this statement is susceptible. The Kentucky Supreme Court may have been relying on the procedural default. Its dismissal of Bowling's claims on the merits would then be considered an alternative holding. In such a situation, we would consider the claims in the struck motion procedurally defaulted. *See Harris v. Reed*, 489 U.S. 255, 264(1989) (stating that "a state court need not fear reaching the merits of a federal claim in an alternative holding"); *Coe v. Bell*, 161 F.3d 320, 330 (6th Cir. 1998). However, the Kentucky Supreme Court may have well been using the word "notwithstanding" to ignore the issue of possible procedural default and consider the claims on the merits. In such a case, Bowling's claims would not be defaulted because the state court would not have been relying on the procedural bar in its disposition of the case.

We find both interpretations eminently plausible. The use of the word "notwithstanding" could suggest either that the Kentucky Supreme Court was enforcing the procedural default or that it was waiving it. Moreover, the possibility that the Kentucky Supreme Court was in fact waiving the default is amplified by the fact that it went on to consider Bowling's claims on the merits. *See Harris*, 489 U.S. at 266 n.13 (noting that "while it perhaps could be argued that this statement would have sufficed had the state court never reached the federal claim," the fact that "the state court clearly went on to reject the federal claim on the merits" makes it less clear that the state court actually relied on the procedural bar). Ultimately, the fact that both interpretations are sensible settles this issue in Bowling's favor, for there must be unambiguous state-court reliance on a procedural default for it to block our review. *See Gall v. Parker*, 231 F.3d 265, 321 (6th Cir. 2000). We therefore proceed to the merits of Bowling's claims.

While the Kentucky Supreme Court noted that Parrish's seventh claim was "not an appropriate one for an RCr 11.42 proceeding," its use of the word "regardless" prior to its substantive review of the claim is as ambiguous as its use of the word "nothwithstanding" in Bowling's case. As such, the Court concludes that the Kentucky Supreme Court did not unambiguously rely on procedural default to bar Parrish's seventh claim for relief. As such, the Court will deny Respondent's motion to dismiss as it relates to this claim.

### E.  Claims 3 and 5

Claims three and five both allege ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984).  Respondent acknowledges that the claims "appear to be facially reviewable by this court" (DN 19 at 8).  Nonetheless, Respondent asserts that "each claim contains sub-parts and the sub-parts, while presented under the general umbrella of ineffective assistance of counsel, are based upon state law." *Id.*.

A defendant is entitled to effective assistance of counsel under the Sixth Amendment.  A petitioner may raise an ineffective-assistance-of-counsel argument that is predicated on counsel's failure to reasonably handle matters of state law.  Thus, a federal court's analysis of whether counsel was effective often entails some consideration of state law.  *See, e.g., Everett v. Beard*, 290 F.3d 500, 509 (3d Cir. 2002) ("A reasonably competent attorney patently is required to know the state of the applicable law, so the parties' focus upon the state of the law at the time of Everett's trial is not misplaced . . .because Everett was charged with murder under state law, we must necessarily reference the elements of accomplice liability for first-degree murder under Pennsylvania law in 1980 in order to evaluate the effectiveness of Everett's trial counsel.").  The fact that a federal court must consult state law to judge counsel's performance, however, does not turn the claim into one of state law.  The claim remains federal because it is predicated on a violation of the Sixth Amendment.  *See, e.g., Duren v. Quarterman*, No. 3:07-CV-625-L, 2009 U.S. Dist. LEXIS 78340 (N.D. Tex. July 22, 2009) (finding counsel was deficient in violation of the Sixth Amendment because he did not know or understand the relevant state law).

The Court has reviewed each of Parrish's ineffective-assistance-of-counsel claims.  Parrish raised each claim in his 11.42 motion, and each was considered by the Kentucky

Supreme Court as a separate claim under *Strickland*. Thus, the claims are neither unexhausted nor procedurally defaulted.

The Court notes that Respondent has also briefly argued the merits of a number of Parrish's ineffective-assistance-of-counsel claims. The current motion seeks dismissal only of "unexhausted and/or procedurally defaulted" claims. Respondent has neither answered the petition nor submitted portions of the record that relate to these claims. The Court cannot properly consider the substance of these claims until Respondent has done so. After Respondent answers the petition and submits portions of the relevant trial court record, Respondent can move to dismiss any claims it deems appropriate. A review of the substance of the claims at this juncture, however, is premature.

## IV.

For the reasons set forth above, **IT IS HEREBY ORDERED** that Respondent's motion to dismiss (DN 19) is **GRANTED** with respect to claim two of the petition, and is **DENIED** with respect to the remaining claims. By separate Order, the Court will schedule a telephonic status conference with the parties to discuss scheduling issues related to the remaining claims.

Date:

cc:      Counsel of record

4412.008